24-1274 Arch Specialty Insurance Company v. Payne. Mr. Lahr. Good morning. May it please the court. Gregory Lahr on behalf of Arch Specialty Insurance Company and Judge Nathan if I may just acknowledge our Philadelphia roots and respectfully say go birds. Recognizing that there was no opposition to our appeal and we could have proceeded on submission. Just to be clear, it's not a reference that we know each other is it? It is not your honor. You look slightly familiar, I actually had that moment so I just wanted to make sure we have no conflict other than apparently rooting for the same football team. Thank and to really emphasize the fraud and injustice that has been brought on Arch as a result of its issuing to commercial general liability policies to this entity. And the reason why we wanted to make this presentation because this is a perfect example of fraud and abuse that happens all too often in New York which is really a detriment to all policyholders and just serves to create inefficiency and more expensive policies for everyone and makes it more difficult to get insurance coverage. What happened here is that Arch gave Mr. Felix Payne the opportunity to take on work at the Randolph Houses project through his entity Huonora Construction. And the only reason why he was able to proceed to work on that project was because Arch was willing to issue the general liability policy to his company based on representations on what the revenue was expected to be for the policy period from 2014 to 2015 and what the payroll was expected to be for that period. He represented to Arch that the revenue would be approximately $150,000 and initially represented that the payroll would be $300,000 but then a couple months later he called up the underwriter at Arch and said I made a mistake, the payroll will be $33,000. At the end of the year, the following October it was realized that the revenue was approximately $1.7 million and the payroll was approximately $1.6 million. Obviously a drastic increase in what was represented to Arch when they determined to issue the policy. The second application was put in and again a representation was made as to revenue and payroll and again it was vastly understated. For the second policy period, the revenue generated was approximately $1.2 million and the payroll was approximately $1.1 million. On that basis, audits were conducted and it was determined that there was a significant amount of additional premium that was owed because the risk exposure to Arch was a lot more than what was initially represented in the policy applications. I don't think that anybody is disputing the change in risk exposure. What we're here to try and figure out is whether or not bail piercing is appropriate. Yes, Your Honor. And the reason for me just mentioning those... You don't disagree that to pierce the corporate bail it has to be that those representations were intentionally misrepresented as opposed to incompetent or negligent, right? The case... You say that the discrepancy is so large it must have been intentional. The case law doesn't really get into intent. It just has to... There has to be a showing... Use domination of the corporate forum to perpetrate a fraud or a wrong, right? Yes, Your Honor. And so, do you think just negligent conduct would count as a fraud or a wrong? It has to be a wrong, an injustice, something that essentially was a detriment to the party that is seeking to pierce the corporate bail. And that's exactly what we have here. There was a misrepresentation about the amount of business that QAnora was going to engage in and actually did engage in. And while there may not... Let's say... I know that you would dispute that this is what the record shows, but let's say we were completely persuaded that Mr. Payne believed the figures that he put down on the forms at the moment he wrote them down. We would not do bail piercing because he would have been mistaken by not using the corporate forum to perpetrate a fraud or a wrong. Your Honor, I may have a point with respect to the initial policy period, but for the second policy period, they certainly knew the amount of business that they had done for the year prior. They'd been working on the construction site... You're just saying that for the second policy period, the inference is inevitable that he was still misrepresenting it. Exactly. He was intentionally misrepresenting it. And perhaps the intent is borne out because the same amount... But the district court seemed to think he might just be very incompetent and just put the same number down again. Well, I don't think incompetence is a justification or a basis to not pierce a corporate bail. There was an injustice that was enacted against ARCH and ARCH did what it agreed to do. It provided insurance coverage, but that comes at a cost. And if the exposure is significantly more than what is initially represented, any insurer has the right to conduct an audit and then request or demand additional premium because of what the exposure actually is. And that's what occurred here. And I think where the trial court got it wrong is the court thought that it was just a mere breach of contract and without more, there was no basis for piercing the corporate bail. But there was actually way more than that. You agree with that, right? If that were all it is, if it's just based on the breach of contract, that's not a basis to... Perhaps. And I don't think the case law really gets into that detail of analysis, but there is references to that a simple breach of contract is probably not sufficient to pierce the corporate bail. But what we have here is evidence and testimony by Mr. Payne that he used his two bank accounts repeatedly for personal use. He used the first account initially to run payroll through and then he testified that he actually considered it his personal account, that he had a right, a personal right to all those funds and to use them as he wishes, despite that it was a corporate account. And that is the domination. That is not the fraud or wrong part of it. Well, I think it's both, Your Honour, because he's using corporate funds for his personal use. And so by essentially depleting the account and using that money for his personal expenses, there was no money left to pay Arch. Do we have anything in the record that suggests he's intentionally depleting it of funds in order to defraud the creditors? Well, I think when you're removing funds from a corporate account to pay for vacation or to pay for electronics or to give donations to your church, I think the intent is there. It's not like he had a separate account that he was removing funds to use for his personal expenses. He was using the corporate account. So I think the intent is essentially implied that he was intentionally depleting that account and using those funds for his personal use. And at the end of the day, there was no corporate funds left to pay the actual creditors of the corporation. And so I think there was way more than just a simple breach of contract situation going on here because the evidence is very clear that Mr. Payne was using these accounts for his personal use and then there wasn't anything left to pay Arch. Can I say, you have these allegations about making attempts to collect payment from Huonora and that you haven't been successful. What have those attempts been and what's the current state of those attempts? Huonora, whilst they never formally made a defunct entity, there are no assets. The Huonora, the two accounts that Huonora had that Mr. Payne opened, the funds were depleted and we did discovery to see if there was any money left. We did discovery whether there was any assets of the company and there aren't anything. So there's nothing to recover from Huonora and Mr. Payne has not sought to use the Huonora entity subsequently in any construction project or anything for that matter. So our only option is to pursue Mr. Payne and the reason why we should have that option is because of the way he abused the corporate form. Thank you very much. Thank you, Your Honour. The case is submitted. Thank you.